**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LOGAN N. MILLS                                    CIVIL ACTION


VERSUS                                            No. 12-991 c/w 12-997, 12-1078,
                                                  & 13-5477
                                                  *Pertains to 12-1078*


CITY OF BOGALUSA, *ET AL*                         SECTION: C (5)


## ORDER AND REASONS

This matter comes to the Court on the Defendants' Motion for Summary Judgment. Rec. Doc. 27. Plaintiff opposes. Rec. Doc. 35. Having considered the record, the law, and the memoranda of counsel, the motion is DENIED for the following reasons.

**I.      Factual Background and Procedural History**

This matter arises out of the April 20, 2011 arrest of Plaintiff Logan Mills by the Bogalusa Police Department. Plaintiff filed the instant action under 42 U.S.C. § 1983 on April 27, 2012, alleging violations of his civil and constitutional rights during his subsequent incarceration at the Washington Parish Jail. No. 12-1078, Rec. Doc. 1. This matter was consolidated with Plaintiff's excessive force claims against the Bogalusa Police in civil actions number 12-991 and 12-997. No. 12-1078, Rec. Doc. 18.

Plaintiff alleges that after his arrest, he was placed in solitary confinement in retaliation for his mother's attempt to ensure that he received proper medication for the gunshot wounds he

1

sustained during his arrest. No. 12-1078, Rec. Doc. 1 ¶¶ 4-10. Plaintiff alleges that while in solitary confinement, deputies denied his repeated requests to use the bathroom and for toilet paper, and instead forced him to attempt to use the bathroom over a covered drain while standing up, resulting in plaintiff soiling the cell, his legs, and his ankle bandage with his own waste. *Id.* ¶¶ 12-17. Plaintiff alleges that he was also denied medical care and sleep during this time. *Id.* ¶ 18. Finally, plaintiff alleges that, after he was released from solitary confinement, one deputy struck him on the head in response to an innocent inquiry about the location of his missing contact solution. *Id.* ¶¶ 21-24.

Plaintiff claims that the deputies who ordered or participated directly in his solitary confinement and who struck  him on the head are individually liable for violations of his right to be free from cruel and unusual punishment. *Id.* ¶¶ 25-34. He also claims damages against the Sheriff of Washington Parish in his official capacity, for failure to train, discipline, and supervise his subordinates regarding the civil and constitutional rights of prisoners at the Washington Parish Jail. *Id.* ¶¶ 35-39. Finally, he seek damages for the state law torts of battery and excessive force. *Id.* ¶¶ 40-44.

In their motion for summary judgment, defendants argue that plaintiff's allegations cannot support a finding of deliberate indifference with respect to his confinement in the drunk tank and suicide room. They argue that any injury suffered by plaintiff as a result of being struck in the head was only *de minimis* in nature. Thus, they argue that the plaintiff cannot overcome the individual defendants' invocation of qualified immunity with respect to his confinement or battery claims. Defendants also argue plaintiff's factual allegations against the Sheriff are

insufficient under the *Monell* doctrine.

**II.      Standard of Review**

<u>A. Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Regardless of whether it bears the burden of proof at trial, the party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). Once the initial burden is satisfied, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324, 106 S. Ct. at 2253. Material facts are those which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

When considering whether any genuine issues of material fact exists, courts view the evidence and inferences drawn from that evidence in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Rather, "so long as the evidence in the record

is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive

at a verdict in that party's favor, the court must deny the motion." *Id.*

B. Qualified Immunity

Government officials are entitled to qualified immunity to the extent that "their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable

person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73

L. Ed. 2d 396 (1982). "To establish an entitlement to qualified immunity, a government official

must first show that the conduct occurred while he was acting in his official capacity and within

the scope of his discretionary authority." *Beltran v. City of El Paso*, 367 F.3d 299 (5th Cir.

2004). "When a defendant invokes qualified immunity, the burden is on the plaintiff to

demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314,

323 (5th Cir. 2002). "[A] plaintiff seeking to defeat qualified immunity must show: (1) that the

official violated a statutory or constitutional right, and (2) that the right was clearly established at

the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en

banc) *cert. denied*, 132 S. Ct. 2740, 183 L. Ed. 2d 614 (U.S. 2012) and *cert. denied*, 132 S. Ct.

2740, 183 L. Ed. 2d 614 (U.S. 2012) (citations omitted) (internal quotation marks omitted). After

*Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), a court may

consider these prongs in either order when qualified immunity is raised.

"For a constitutional right to be clearly established, its contours must be sufficiently clear

that a reasonable official would understand that what he is doing violates that right." *Hope v.*

*Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (citations omitted) (internal

quotation marks omitted). Thus, to analyze this prong, a court must determine "whether the law so clearly and unambiguously prohibited [an official's] conduct that every reasonable official would understand that what he is doing violates [the law]." *Morgan*, 659 F.3d at 371. To conclude that this requirement is satisfied, a court "must be able to point to controlling authority – or a robust consensus of persuasive authority – that defines the contours of the right in question with a high degree of particularity." *Id.* at 371-72.

### C. Rights of Pretrial Detainees

Although the plaintiff pleaded his action under the Eighth Amendment's prohibition on cruel and unusual punishment, the Court will construe the confinement claims as alleged due process violations. The textual source of a pretrial detainee's rights differ from his convicted counterpart because the former is entitled to be free from punishment altogether, whereas the latter is only entitled to be free from punishments that are cruel and unusual. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983, 77 L. Ed. 2d 605 (1983); *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 1872, 60 L. Ed. 2d 447 (1979).

Where excessive force is claimed, the distinction is moot because the same standards apply to the use of force against pre- and post-trial detainees. *See Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993). For other conditions of confinement, the standard for imposing liability for a pretrial detainee depends on whether a pretrial detainee claims that his rights were violated in furtherance of an official policy or pervasive condition and whether, properly understood, such policy or condition is the "focus of the claim." *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009) (en banc). Where these requirements are not met, the detainee must

5

show deliberate indifference to a substantial risk of harm on the part of any actor he seeks to hold liable, including a policy-maker or supervisor, just as in the post-trial incarceration scenario. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 649 n.4 (1996) (en banc). However, if a policy or condition is properly at issue, the detainee "is relieved from the burden of demonstrating a municipal entity's or individual jail official's actual intent to punish because . . . intent may be inferred from the decision to expose a detainee to an unconstitutional condition." *Shepherd*, 591 F.3d at 452. This distinction has been sufficiently difficult to apply to occasion multiple *en banc* opinions in the Fifth Circuit. *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc); *Shepherd*, 591 F.3d 445; *Hare*, 74 F.3d 633.

Here, although the plaintiff alleges that his rights were violated as a result of official policies, No. 12-1078, Rec. Doc. 1 ¶¶ 28, 38, these allegations do not appear to be the "focus of the claims." All of the plaintiffs claims depend on the alleged constitutional duty to act or refrain from acting of specific individuals "interposed" between plaintiff and the jail. *See Scott*, 114 F.3d at 53 (deliberate indifference required where "an actor . . . is interposed between the detainee and the municipality"). The Court need not resolve this question finally at this time because, as explained in detail below, plaintiff can survive summary judgment under the more onerous deliberate indifference standard.

### III.   Analysis

### A. Solitary Confinement

Plaintiff claims that his confinement in the drunk tank and suicide room violated his constitutional rights. To prevail on this claim, plaintiff must show that a substantial risk of

6

serious harm existed; that an official was aware of the facts from which he could infer that risk; and that he in fact drew the inference from those facts. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

Defendants argue that summary judgment should be entered against plaintiff on this claim because plaintiff cannot prove a substantial risk of serious harm or that the defendants were deliberately indifferent to such a risk if it existed. Rec. Doc. 27-2 at 11. Pointing to the affidavit of an assistant warden, Rec. Doc. 27-5, and a booking activity sheet, Rec. Doc. 27-6, defendants argue that plaintiff was housed in the suicide room for at most one day, as opposed to the four or five he claims in the complaint. Rec. Doc. 27-2 at 12. They also argue that, even assuming plaintiff was confined in the suicide room for four to five days, this was not sufficiently extreme to find a violation of his constitutional rights. *Id.* at 13-14.

*1. Substantial Risk of Serious Harm*

As an initial matter, much of the evidence submitted by defendants to establish the length of plaintiff's solitary confinement is either inadmissible or of low weight. The assistant warden's affidavit states that the relevant jail records "clearly indicate" that plaintiff was held in the suicide room for no more than one day. Rec. Doc. 27-5 ¶ 11. This statement does not reflect personal knowledge of a fact that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(4). The booking activity sheet has not been authenticated by a competent witness. Moreover, it appears to show unexplained transfer activity on April 27, 2011, which would support the plaintiff's recollection of the timing. Rec. Doc. 27-6.

The only admissible, probative evidence defendants identify is the assistant warden's

sworn statement that, based on his personal knowledge, plaintiff was only confined for 12 hours at most. Rec. Doc. 27-5 ¶ 12. Plaintiff has declared that to the best of his recollection he was kept in the suicide room for four to five days. Rec. Doc. 35-2 ¶ 13. Summary judgment does not allow this Court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc.*, 939 F.2d at 1263. There is clearly a triable dispute of fact regarding the length of time that plaintiff was held in the suicide room.

Contrary to defendant's argument, confinement in the suicide room under the conditions alleged by the plaintiff constitutes a risk of serious harm in a clearly established, constitutional sense. Plaintiff's affidavit states that he was placed in the 6' by 8' suicide room and made to use a grated hole in the center of the floor as a toilet. Rec. Doc. 35-2 ¶ 8. During that time, he had a bandaged but open wound on his ankle, which together with his left arm sling, prevented him from squatting to relieve himself. *Id.* ¶ 10. When plaintiff tried to relieve himself while standing, feces ran down his legs and onto his ankle bandages. *Id.* ¶ 11. He had neither toilet paper nor towels. *Id.* ¶¶ 10-11. Whenever he relieved himself in the suicide room, feces accumulated there, such that plaintiff was forced to live exposed to his own waste. *Id.* ¶ 11.

"[C]onditions involving exposure to human waste" warrant special judicial caution. *Gates v. Cook*, 376 F.3d 323, 341 (5th Cir. 2004) (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990)) (internal quotation marks omitted). Exposure to waste "carries particular weight in the conditions calculus" because it "evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (citations omitted). The Fifth Circuit has found a

8

constitutional violation where inmates were confined in a windowless, unlighted cell where raw sewage remained on the floor "for approximately one day." *McCord v. Maggio*, 927 F.2d 844, 848 (5th Cir. 1991); *see also Despain*, 264 F.2d at 978 (finding Eighth Amendment violation where flooding resulted in inmate exposure to human waste for 36-hour period). The constitutional principles forbidding confinement under these conditions are sufficiently clear and well-established to foreclose qualified immunity. *McCord*, 927 F.2d at 848.

Moreover, the conditions alleged in this case raise a risk of harm that is greater than those presented in *McCord* in the clearly established constitutional sense. The current case involves direct unprotected contact with, rather than mere exposure or proximity to, human waste. *See Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990) (forcing inmates to work in a well for ten minutes at most where they faced "a shower of human excrement without protective clothing and equipment would be inconsistent with any standard of decency"). It also involves exposure and contact with a wounded area, creating meaningful risk of infection or other complications. *See Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) ("the open wound itself posed a substantial health risk to Gobert's health."). Finally, it involves the loss of dignity inherent in being made to soil oneself. *See Deffenbaugh v. Linn Cnty.*, 09-6347, 2011 WL 1337097 (D. Or. Apr. 6, 2011) (denying summary judgment against plaintiff where "as a double amputee, [plaintiff could not] 'squat' to use the floor grate and thus soiled himself"). Although *Fruit* and *Deffenbaugh* are not directly binding on defendants, the principles reflected therein follow logically from the well-established constitutional duty to provide basic human needs to inmates, such that they may support the plaintiff's entitlement to recovery. In other words, the state of the

law in 2011 gave defendants "fair warning" that their alleged treatment of plaintiff was unconstitutional in these respects. *Hope*, 536 U.S. at 741, 122 S. Ct. at 2516. Therefore, no summary judgment is warranted on this issue.

      *2. Deliberate Indifference*

      Plaintiff has come forward with evidence from which a fact-finder could infer deliberate indifference. He points to his allegations that he asked the guards to use the bathroom and was told to use the grated hole and that he told defendants that he could not squat down because of his injuries but was told to "f*cking deal with it!" Rec. Docs. 35 at 9, 35-2 ¶ 10. It is also reasonable to infer that defendants' were aware of the structure of the suicide room, in particular that waste had no place to go if it did not pass through the grating. Plaintiff alleges that defendants had contact with him many times through a slot in the door after he soiled the cell and himself. *Id.* ¶ 12. From this, a jury could infer that defendants were aware that plaintiff soiled himself and the cell in a manner requiring their attention and intervention, but did not act to address the situation. Indeed, rather than helping, plaintiff alleges that Sgt. Smith screamed obscenities at him. *Id.* Summary judgment is unwarranted given plaintiff's factual allegations.

      The Court also notes that discovery in this case is not complete and neither party has offered deposition testimony in support of or opposition to this motion for summary judgment. Summary judgment based on the state of mind of the confining deputies would be premature if their depositions had not been completed when this motion for summary judgment was submitted. *See* Fed. R. Civ. P. 56(d)(2) (denial of summary judgment pending discovery). Therefore, even if the evidence presented did not warrant an inference of deliberate indifference,

the Court would exercise its discretion to deny summary judgment out of an abundance of caution. *See Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513 (Trial courts should act "with caution in granting summary judgment . . . [and] may . . .deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.").

### B. Excessive Force

Plaintiff claims that Deputy Smith struck him in a retaliatory manner on July 2, 2011, when he asked deputies about his missing contact solution. When a pretrial detainee claims that excessive force was applied to him, the appropriate analysis is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." *Valencia v. Wiggins*, 981 F.2d 1440, 1446 (5th Cir. 1993) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156 (1992)). A trier of fact must base its determination of subjective intent on objective factors, such as the extent of the injury suffered by the detainee, the need for application of force, whether force was disproportionate to the need presented, the threat reasonably perceived by the responding officials, and efforts to temper the severity of the force used. *Id.* at 1446 & n.9 (citing *Hudson v. McMillian*, 962 F.2d 522, 523 (5th Cir. 1992)).

Defendants argue that there is no dispute of fact regarding whether Deputy Smith applied force to the plaintiff in a good faith effort to maintain or restore discipline, rather than maliciously and sadistically for the purpose of causing harm. Rec. Doc. 27-2 at 15. Yet they concede that Deputy Smith's account of the incident is directly contradicted by the plaintiff's. *Id.* Whereas Deputy Smith's incident report states that he only applied force to the plaintiff in

11

refusal to comply with direct orders, and even then only applied such force necessary to subdue him, Rec. Doc. 27-10, plaintiff alleges that Deputy Smith intentionally rammed his head against the wall and a metal counter in a visiting booth in direct response to plaintiff asking for his contact solution, asking for a complaint form, and allegedly "shoot[ing] at the cops" during his arrest. Rec. Doc. 35-2 ¶¶ 17-24. Clearly under the circumstances as alleged by plaintiff, a trier of fact could infer that force was applied in a malicious fashion.

Defendants also argue that plaintiff's claim is barred under 42 U.S.C. 1997e(e) by his failure to show anything other than *de minimis* physical injury. 42 U.S.C. 1997e(e) bars recovery for "mental and emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." "Physical injury" means an injury that is more than *de minimis*, but it need not be significant. *Alexander v. Tippah County, Miss.*, 351 F.3d 626 (5th Cir. 2003).

Based on the evidence presented, whether plaintiff sustained a mild traumatic brain injury as a result of his encounter with Deputy Smith is a triable issue of fact. The physicians' notes from plaintiff's visit to Riverside Medical Center immediately after the incident document complaints of tenderness at the back of the head, headache, "pressure" inside plaintiff's head, nausea, and dizziness. Rec. Doc. 27-12. Plaintiff alleges the same symptoms in his affidavit, in addition to complaining of memory loss. Rec. Doc. 35-2 ¶¶ 23-24. Brain trauma, even of the mild variety, rises above the *de minimis* threshold. Further, even if it is shown that plaintiff's injuries were *de minimis*, this does not preclude his prayer for nominal or punitive damages. *Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007). Therefore, summary judgment is not

warranted on this claim.

C. Supervisory Liability

Plaintiff claims that the Washington Parish Sheriff is liable in his official capacity for systemic failures to train and supervise his employees which allegedly resulted in their violation of plaintiff's constitutional rights. No. 12-1078, Rec. Doc. 1 ¶¶ 35-39. Supervisory officials cannot be held liable under § 1983 for the actions of subordinates under any theory of vicarious or respondeat superior liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To show that the Sheriff is liable in his official capacity as a policy maker, the plaintiff must show that a decision which the Sheriff made (1) created or reflected the existence of a policy under *Monell* and its progeny, (2) was made deliberate indifference to his constitutional rights, and (3) resulted in his constitutional injury. *See Brown v. Bryan County, OK*, 219 F.3d 450, 458 (5th Cir. 2000).

Defendants attack the adequacy of plaintiff's complaint with respect to the first prong of this standard. They argue that the plaintiff has not identified "with particularity" the policy which allegedly resulted in his constitutional injury. Thus, they contend that plaintiff's claim cannot survive under the standard applicable to motions to dismiss. Rec. Doc. 27-2 at 18-19. However, this argument is based on a partially mistaken idea that plaintiff faces a heightened pleading standard for his official capacity claim against the Sheriff. Claims against officers in their official capacities are not subject to the heightened pleading requirements applicable to individual capacity suits under § 1983 because official capacity lawsuits are "an alternative means of pleading an action against the governmental entity involved." *Baker v. Putnal*, 75 F.3d

13

190, 195 (5th Cir. 1996); *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

However, even under the traditional Rule 8 notice pleading standard, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citation omitted). Moreover, in light of more recent precedent, complaints of all kinds must contain enough facts "to state a claim for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S. Ct. 1955, 1965, 1974,167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' -- that the pleader is entitled to relief.'").

What these requirements mean in practice when applied to a municipal liability claim has been the subject of a great deal of judicial thought, leading to different approaches. *See generally Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 841-45 (S.D. Tex. 2011) (describing different approaches). Fifth Circuit cases since *Twombly* and *Iqbal* have continued to disapprove of complaints that merely recite failures to train, supervise, or discipline as an element of a municipal liability claim. *See, e.g.*, *Whitley v. Hanna*, 726 F.3d 631, 649 (5th Cir. 2013) ("The proposed amended complaint makes no specific factual allegations of the county's policies and simply adds the words 'policies, practices, and/or customs' to Whitley's perceived wrongs. Such

14

allegations are insufficient to survive dismissal."). Persuasive authority holds that a plaintiff can

transcend bare, conclusory allegations to state a plausible claim for relief by identifying in the

complaint, among other things, "past incidents of misconduct to others, multiple harms that

occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of

multiple officials in the misconduct, or the specific topic of the challenged policy or training

inadequacy." *Thomas*, 800 F. Supp. 2d at 843-44 (collecting cases) (footnotes omitted).

      Turning to the present case, plaintiff alleges that Sheriff Crowe failed to train officers in

the appropriate use of force against detainees, failed to discipline officers who used unnecessary

force, failed to train commanders in the supervision of deputies, and sanctioned the use of

solitary confinement and other material deprivations as forms of punishment. No. 12-1078, Rec.

Doc. 1 ¶ 38. Contrary to defendants' argument, these allegations concern very narrow, plausible

subject areas. That plaintiff's constitutional injuries occurred in the Washington Parish Jail

around other inmates and officers or with command authorization is a specific factual allegation

that adds to the overall plausibility of his municipal liability claims. *Id.* ¶¶ 15, 22. In light of

these allegations and the authority cited above, plaintiff has adequately stated a claim for relief

that may proceed to trial if founded on evidence.

      <u>D. State Law Claims</u>

      Defendants also claim that the plaintiff's state law claim for battery is barred by the

"lawful arrest" justification under state law. La. Rev. Stat. 14:18(2). In light of the Court's

observations above with respect to the plaintiff's excessive force claim, there is also a triable

issue of fact on this claim.

15

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment is DENIED. Rec.

Doc. 27.

New Orleans, Louisiana, this 25th day of November, 2013.


_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE

16